Daniel A. McIntosh et al. *v.* Henry C. Rutland, Administrator.

## [41 South. Rep., 372.]

1. Lands. *Sale of timber. Executors and administrators. Distribution.*

Where a husband and wife owned lands jointly and sold the timber thereon, the wife departing this life shortly thereafter, and her administrator collected the purchase money:

(*a*) The heirs of the wife, the rights of her creditors not intervening, are entitled to her share of the funds; and

(*b*) The husband being one of her heirs, his assignee has a status in the court where the administration is pending to compel distribution by the administrator.

2. Same. *Option.*

A contract for the sale of timber on land, giving the purchaser the right to enter, cut and remove the same in case the grantors failed to deliver it to the grantee, is not a mere option.

From the chancery court of Covington county.

Hon. James L. McCaskill, chancellor.

McIntosh and others, doing business under the firm name of McIntosh Brothers, the appellants, were complainants in the court below; Rutland, administrator, the appellee, was defendant there. From a decree in defendant's favor the complainants appealed to the supreme court.

One Culpepper and his wife entered into a contract with the Leake Milling Company for the sale of merchantable pine timber on certain land which they owned. Under the terms of the contract, if the Culpeppers failed to deliver the timber, the Leake Milling Company was authorized to enter upon the land and cut and remove it. Mrs. Culpepper died before the contract was fulfilled, leaving as her heirs her husband and an infant daughter. Culpepper, after the death of his wife, assigned all his interest in the contract to Thomas Chain, and

Chain assigned one-half the interest he acquired to appellants, McIntosh Brothers. After the appointment of Rutland as administrator of the estate of Mrs. Culpepper, the Leake Milling Company, with the consent of the administrator, entered upon the property and began cutting the timber, and paid the administrator for the timber cut. McIntosh Brothers and Chain filed a petition in the chancery court asking for a distribution of the funds in the hands of the administrator, claiming one-half interest in same. The administrator demurred to the petition, alleging that the bill failed to show that Mrs. Culpepper was the owner of the land at the time of her death, and hence failed to show any interest descendable to her husband. The court below sustained the demurrer and dismissed the petition.

*Sullivan & Tally,* for appellants.

When the court below sustained the demurrer on the ground that the petition did not show that Mrs. Culpepper owned the land at the time of her death, it overlooked the fact that the petition clearly charged that she had sold the timber growing on the land and that this sale constituted a valid and binding contract on her at the time of her death, without regard to what disposition she may have made of the land after the sale of the timber. If the petition had alleged that Mrs. Culpepper had sold the land after the sale of her timber, the petition would still have been good against the demurrer, as the right to sell or contract the timber growing upon the land to one person and to sell the land to another is too clear for controversy. The demurrer admitted the truth of all the allegations in the petition and therefore admitted that the timber contract of Mrs. Culpepper with the Leake Milling Company was valid and binding at the time of her death, and that her interest in that contract descended by operation of law to her heirs, viz., her husband and her daughter, Bertha.

The contract for the sale of timber being a valid, subsisting and binding contract at the time of the death of Mrs. Culpepper,

one which she could have enforced if living, and one which her legal representatives could enforce after her death, why was it necessary to charge in a petition that she died the owner of the land? There is no controversy about the land; the only controversy is about the proceeds of the timber contract made by Mrs. Culpepper in her lifetime with the Leake Milling Company, and if she died the owner of this contract, which, as we have said, is admitted to be true by the demurrer, then the demurrer should have been overruled.

The petition comes clearly under the provisions of sec. 1961 of the code of 1892, and under the facts alleged the petitioners were clearly entitled to the relief sought.

*Alexander & Alexander,* and *Livingston & McLaurin,* for appellee.

The bill is not only insufficient for lack of essential averments and for lack of necessary parties, but without regard to these matters, the bill is filed on a wholly erroneous view as to the nature of the contract.

The proceeding is confessedly filed under Code 1892, § 1961, to compel the distribution of an estate. The first question which arises in such a proceeding is as to the right of the person to a distributive share, and as to the existence of such a share to be distributed, and as to whether the conditions have arisen calling for a distribution. Such a petition is properly filed as a proceeding in the administration of the estate. It is not proper to file an original bill therefor. It is important that the proceedings be a part of the administration proceedings, because all persons interested in the administration of the estate are necessarily interested in the distribution. Before there can be a distribution there must be a showing of the solvency of the estate; there must be a payment of the costs of administration, including attorney's fees; creditors of the estate must be paid, and, in fact, the court must have all of these matters before it

at the time to judge as to the advisability or propriety of mak-
ing a distribution. Section 1961 is in the chapter on executors
and administrators. The rights of distributees are subordinate
to creditors and the court cannot, except in an estate proceeding
proper, decide as to the distribution of the estate.

It is not shown that there is money on hand for distribution;
it is not alleged that there is any money on hand at all. It is
alleged that the administrator collected some money on account
of the cutting of some timber on certain land. This belonged to
the owners and inheritors of the land and not to the adminis-
trator, since it was cut after the death, and there is no averment
that Mrs. Culpepper owned the land when she died. But, even
if we presume that the money collected for the timber was part
of the estate to be administered by the administrator, it clearly
was necessary to aver that he had a balance of money on hand,
and that there were no debts to be paid, and that over and above
the expenses of administration there would be a fund to be dis-
tributed.

Whitfield, C. J., delivered the opinion of the court.

The instrument in this case evidencing the agreement as to
the sale of the timber is a plain contract, and not a mere option
at all. The interest in the proceeds of the timber, upon the
death of the wife, descended to the husband and daughter. The
husband, for a valuable consideration, assigned his entire in-
terest away. It is averred in the bill that there are no other
assets belonging to the estate, except the interest in the pro-
ceeds of this timber. On this state of facts, averred in the bill,
it is perfectly manifest that the demurrer should have been
overruled.

*The decree is reversed, the demurrer overruled, and cause
remanded for answer within thirty days from filing of mandate
in the court below.*